1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL RODRIGUEZ, | Case No. 1:19-cv-00001-DAD-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| UNITED STATES OF AMERICA, | ORDER TERMINATING PLAINTIFF'S MOTION TO CLARIFY |
| Defendant. | (ECF Nos. 37, 42) |

Plaintiff Angel Rodriguez is appearing pro se and in forma pauperis in this civil rights action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2674.

Currently before the Court is Defendant's motion for summary judgment, filed April 24, 2020. (ECF No. 37).

## I.

## RELEVANT BACKGROUND

This action is proceeding against the United States of America for violation of the FTCA for assault and battery. As previously stated, on April 24, 2020, Defendant United States of America filed a motion for summary judgment. (ECF No. 37). On July 21, 2020, Plaintiff filed an opposition. (ECF No. 40). On July 28, 2020, Defendant filed a reply. (ECF No. 41). On August 14, 2020, Plaintiff filed a motion to clarify Defendant's reply, which the Court construes

as a supplemental opposition to the motion for summary judgment.[1] See Castro v. United States, 540 U.S. 375, 38–82 (2003) (courts may recharacterize a pro se motion to "create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis"). Defendant's motion for summary judgment is deemed submitted for review without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

---

[1] As Plaintiff does not require clarification of Defendant's reply, but rather proffers additional arguments in support of his opposition to summary judgment, the Court will terminate the motion. In the interest of justice, the Court will consider Petitioner's arguments set forth in the supplemental opposition.

# III.

## DISCUSSION

### A.  Summary of Plaintiff's Complaint

Plaintiff alleges that Senior Officer Specialist Javier Ramos, Jr. ("Officer Ramos") used excessive force while escorting Plaintiff from the recreation yard to Plaintiff's cell in the Special Housing Unit ("SHU") at the United States Penitentiary in Atwater, California ("USP Atwater").

Plaintiff alleges that on June 25, 2018, while Officer Ramos was escorting Plaintiff from the recreation yard back to Plaintiff's cell, Ramos began pushing Plaintiff's arms upwards and forward while his hands were secured in handcuffs behind his back. This caused Plaintiff to walk on his toes and at an extremely fast pace. Plaintiff alleges that this caused him pain because Plaintiff has seven screws and a plate in his left ankle and two screws in his right ankle.

While walking down the walkway, Plaintiff stopped in front of the video surveillance camera and complained to Officer Fontes, who was behind escorting Plaintiff's cellmate. Plaintiff asked Fontes to tell Ramos to stop pushing Plaintiff because Plaintiff had shower shoes on and had screws in his ankles. Plaintiff alleges that Officer Ramos then pushed Plaintiff's arms forward and without warning placed Plaintiff in a bear hug from behind. Ramos lifted Plaintiff, slammed him into the recreation cages, and after a brief struggle, slammed Plaintiff to the ground. Plaintiff contends that Ramos threw his whole body on top of Plaintiff. Officer Fontes (after taking Plaintiff's cellmate back to the recreation cages) placed Plaintiff on his side and placed his body on top of Plaintiff. Officer Ramos then began pushing and banging Plaintiff's head against the concrete ground.

Plaintiff requests compensation in the amount of $50,000.00.

### B.  Statement of Undisputed Facts

1.      Plaintiff Angel Rodriguez is a federal prisoner, and at all times relevant to his action, Plaintiff was housed at USP Atwater. (Pl.'s Am. Compl. 4, ECF No. 8;[2] Zaragoza Decl. ¶ 3, ECF No. 37-4).

///

---

[2] Page numbers refer to ECF page numbers stamped at the top of the page.

2.      At approximately 11:30 a.m. on June 23, 2018, Officer Ramos started escorting Plaintiff from the SHU recreation area back to Plaintiff's cell. (Pl.'s Am. Compl. 4; Ramos Decl. ¶ 5, ECF No. 37-3; Zaragoza Decl. ¶¶ 5, 6, Ex. 1).

3.      Officer Ramos and other Federal Bureau of Prison ("BOP") officers identified in this case are law enforcement officers acting within the scope of their employment. (Ramos Decl. ¶ 5; ECF No. 40 at 22).

4.      At relevant times, Plaintiff did not have any restrictions on his Medical Duty Status ("MDS") regarding Plaintiff's mobility. (Ramos Decl. ¶ 6, Ex. 1; Pl.'s Decl. ¶ 11, ECF No. 40).[3]

5.      While being escorted back to his cell, Plaintiff stopped in front of the video surveillance camera and turned his head to make a complaint to Officer Fontes. (Pl.'s Am. Compl. 5; Zaragoza Decl. Ex. 1).

6.      Officer Ramos then pushed Plaintiff's arms forward and without warning placed Plaintiff in a bear hug from behind. (Pl.'s Am. Compl. 5; Zaragoza Decl. ¶¶ 5, 6, Ex. 1).[4]

7.      Plaintiff then placed all his weight down so as to get to the ground. (Pl.'s Am. Compl. 5; Zaragoza Decl. Ex. 1).[5]

8.      Officer Ramos was able to lift Plaintiff up and slammed Plaintiff into the recreation cages. (Pl.'s Am. Compl. 5; Zaragoza Decl. Ex. 1).

9.      Plaintiff pushed his head backwards. After a brief struggle, Officer Ramos was able to readjust his grip and slammed Plaintiff to the ground. (Pl.'s Am. Compl. 5; Ramos Decl. ¶ 6; Zaragoza Decl. Ex. 1).

[3] Plaintiff disputes this fact, citing to his medical records and affidavit. (ECF No. 40 at 22). However, the evidence to which Plaintiff cites does not dispute that Plaintiff did not have any restrictions on his MDS regarding Plaintiff's mobility. Further, Plaintiff admits that he "did not have, nor need a special accommodation, or medical order from Health Services that would allow [him] to walk at a slower pace." (Pl.'s Decl. ¶ 11, ECF No. 40).

[4] Plaintiff disputes this fact, citing to the video, the operative complaint, and Plaintiff's affidavit. (ECF No. 40 at 22). However, the evidence to which Plaintiff cites does not dispute that Officer Ramos pushed Plaintiff's arms and placed Plaintiff in a bear hug. Moreover, this fact is taken directly from the Amended Complaint. (Pl.'s Am. Compl. 5).

[5] Plaintiff disputes whether Officer Ramos was attempting to place Plaintiff on the ground when Plaintiff placed all his weight down. (ECF No. 40 at 22). The Court notes that this dispute is not material. Moreover, the Amended Complaint itself states that Officer Ramos was attempting to place Plaintiff on the ground when Plaintiff placed all his weight down. (Pl.'s Am. Compl. 5).

10.     Plaintiff pushed his head back to get air and in order to get Officer Ramos off of Plaintiff. (Pl.'s Am. Compl. 5; Ramos Decl. ¶ 5; Zaragoza Decl. Ex. 1).

11.     Officer Ramos continued to press Plaintiff to the ground. (Pl.'s Am. Compl. 5; Ramos Decl. ¶ 5; Zaragoza Decl. Ex. 1).[6]

12.     Other officers immediately responded to the threat. (Pl.'s Am. Compl. 5; Ramos Decl. ¶ 5; Zaragoza Decl. Ex. 1; ECF No. 40 at 23).

13.     As additional officers arrived, Officer Ramos backed away from the situation. (Pl.'s Am. Compl. 5; Ramos Decl. ¶¶ 5, 6; Zaragoza Decl. Ex. 1; ECF No. 40 at 23).

14.     None of the officers, including Officer Ramos, threw any punches or used munitions such as pepper spray, batons, or weapons. (Ramos Decl. ¶ 6; Zaragoza Decl. Ex. 1; ECF No. 40 at 23).

15.     BOP preserved the video surveillance of the incident. (Ramos Dec. ¶ 7, Ex. 2; Zaragoza Decl. ¶ 6, Ex. 1).

16.     Consistent with BOP policy, Plaintiff was promptly taken for a medical assessment. The medical examination was videotaped and preserved. (Pl.'s Am. Compl. 6; Ramos Decl. ¶ 7; Zaragoza Decl. ¶ 7, Ex. 2).

17.     During the medical assessment, Plaintiff denied having any pain. (Zaragoza Decl. ¶7, Ex. 2, 3).[7]

18.     The medical assessment documented that Plaintiff did not have any injury that was attributable to the incident involving Officer Ramos. (Zaragoza Decl. ¶7, Ex. 3; ECF No. 40 at 24).

///

---

[6] Although Plaintiff denies that Officer Ramos pressed Plaintiff to the ground *in an effort to maintain control*, (ECF No. 40 at 23), it is undisputed that Ramos continued to press Plaintiff to the ground. (Pl.'s Am. Compl. 5; Pl.'s Decl. ¶ 9).

[7] Plaintiff disputes this fact, citing to the medical assessment video, Plaintiff's affidavit, Plaintiff's administrative complaint, and tort claim statement of facts. (ECF No. 40 at 24). Plaintiff asserts that the video shows Plaintiff informing the lieutenant that Plaintiff was hurt. (ECF No. 40 at 27). Although towards the end of the medical assessment video, Plaintiff calls attention to scrapes on his arm and back, Plaintiff shook his head in the negative when asked whether he was feeling any pain earlier in the assessment. The Court is "not required to accept a non-movant's version of events when it is 'clearly contradict[ed]' by a video in the record and the accuracy of the video is not disputed." Lehman v. Robinson, 346 F. App'x 188 (9th Cir. 2009) (quoting Scott, 550 U.S. at 378). Here, the video shows that Plaintiff denied having any pain.

1    19.    Plaintiff did not return to Health Services for additional treatment. (Zaragoza

2    Decl. ¶ 7).[8]

3    **C.  Analysis of Defendant's Motion**

4    The FTCA constitutes a limited waiver of the United States' sovereign immunity and,

5    generally, is the exclusive remedy for claims of personal injury, property damages, or death

6    caused by the negligent or wrongful act of an employee of the United States who was acting

7    within the scope of his or her employment. 28 U.S.C. §§ 1346, 2671–80. "Because [Plaintiff's]

8    tort claims are brought under the FTCA, and the events at issue occurred in California, we apply

9    California tort law." Avina v. United States, 681 F.3d 1127, 1130 (9th Cir. 2012) (citing

10   Richards v. United States, 369 U.S. 1, 7 (1962)).

> Under California law, to prevail on the tort of assault, the plaintiff must establish that: (1) the defendant threatened to touch the plaintiff in a harmful or offensive manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the plaintiff's harm. Judicial Council of Cal., Civil Jury Instructions No. 1301 ("Assault") (2012); Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007) (defining civil assault under California law).
>
> To prevail on a claim of battery under California law, a plaintiff must establish that: (1) the defendant touched the plaintiff or caused the plaintiff to be touched with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's situation would have been offended by the touching. Judicial Council of Cal., Civil Jury Instructions No. 1300 ("Battery") (2012); Ashcraft v. King, 228 Cal. App. 3d 604, 278 Cal. Rptr. 900, 903–04 (Ct. App. 1991) (defining civil battery under California law).

20   Avina, 681 F.3d at 1130–31.

21   "Additionally, under California law, a peace officer is privileged to use reasonable force,

22   such as in shackling a prisoner, and therefore a California-law battery claim is a 'counterpart' to

23   a federal excessive force claim under section 1983." Harding v. City & Cty. of San Francisco,

24   602 F. App'x 380, 384 (9th Cir. 2015) (citing Edson v. City of Anaheim, 63 Cal. App. 4th 1269,

25   1273–75 (Cal. Ct. App. 1998)). See also Brown v. Ransweiler, 171 Cal. App. 4th 516, 527 n.11

---

27   [8] Plaintiff disputes this fact, citing to the medical assessment video, Plaintiff's affidavit, Plaintiff's administrative complaint, and tort claim statement of facts. (ECF No. 40 at 24). There is no record of any return visit. Although

28   Plaintiff may have requested a new assessment, there is no evidence establishing that Plaintiff did in fact return for further treatment.

1 (Cal. Ct. App. 2009) ("Because federal civil rights claims of excessive use of force are the

2 federal counterpart to state battery and wrongful death claims, federal cases are instructive in this

3 area."); Garcia v. State, No. D071393, 2017 WL 5017409, at *5 (Cal. Ct. App. Nov. 3, 2017)

4 (unpublished) ("[C]ourts appear to be in accord" that "the Eighth Amendment's analytical

5 framework governing [a] section 1983 claim applies with equal force to [California] state law

6 claim for assault and battery"). Therefore, because Plaintiff is a prisoner and his assault and

7 battery claim concerns the conduct of a correctional officer, Plaintiff must establish that Officer

8 Ramos used excessive force.[9]

9 "[W]henever prison officials stand accused of using excessive physical force in violation

10 of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was

11 applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

12 cause harm." Hudson v. McMillian, 503 U.S. 1, 6–7 (1992) (citing Whitley v. Albers, 475 U.S.

13 312, 320–21 (1986)). In making this determination, the Court may evaluate (1) the extent of any

14 injury suffered by Plaintiff; (2) the need for application of force; (3) the relationship between that

15 need and the amount of force used; (4) the threat reasonably perceived by the responsible prison

16 officials; and (5) any efforts made to temper the severity of a forceful response. Hudson, 503

17 U.S. at 7 (citing Whitley, 475 U.S. at 321).

18 "Because the excessive force inquiry nearly always requires a jury to sift through

19 disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on

20 many occasions that summary judgment or judgment as a matter of law in excessive force causes

21 should be granted sparingly." Avina, 681 F.3d at 1130 (citation omitted).

22 The record is viewed in the light most favorable to the nonmovants, . . . *Tolan v.
Cotton*, 572 U.S. 650, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) (per

23 curiam), so long as their version of the facts is not blatantly contradicted by the
video evidence, *Scott v. Harris*, 550 U.S. 372, 378-79, 127 S. Ct. 1769, 167 L. Ed.

24 _____

25 [9] The Court notes that in the summary judgment motion, Defendant states that the "Ninth Circuit has applied the
*Fourth Amendment's* excessive force standard in considering whether force was unreasonable in the context of a

26 California state-law assault and battery claim," citing to Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912,
921–22 (9th Cir. 2001). (ECF No. 37-1 at 12) (emphasis added). However, Arpin concerned a plaintiff who was not

27 incarcerated. "[F]or the intentional tort of battery, a plaintiff must prove that the peace officer's use of force was
unreasonable under the Fourth Amendment. In the analogous prison context, the reasonableness of a correctional

28 officer's conduct is analyzed under the Eighth Amendment excessive force standard." Haney v. Castillo, No.
F062080, 2012 WL 890671, at *2 (Cal. Ct. App. Mar. 15, 2012) (unpublished) (citations omitted).

2d 686 (2007). The mere existence of video footage of the incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage. *See id.* at 380 (focusing on whether a party's version of events "is so utterly discredited by the record that no reasonable jury could have believed him").

Vos v. City of Newport Beach, 892 F.3d 1024, 1028 (9th Cir. 2018).

Officer Ramos declares that while he was escorting Plaintiff from the SHU recreation area back to Plaintiff's cell, Plaintiff started pulling away from Ramos in an attempt to break Ramos's control of the escort. (Ramos Decl. ¶¶ 5, 6). Ramos attempted to gain control of Plaintiff, and Plaintiff went down on the ground. Plaintiff moved his head in a manner that Ramos interpreted as a headbutt, but Ramos was able to spin Plaintiff around so Plaintiff's stomach was facing the ground and Plaintiff could not continue headbutting Ramos. During the attempt to gain control, Ramos declares that Plaintiff was kicking and tried to grab Ramos in the groin and pinch him. (Ramos Decl. ¶ 5). Officer Ramos declares that he did not push Plaintiff in order to make him walk faster than was possible or necessary. (Ramos Decl. ¶ 6).

In contrast, Plaintiff's account of the escort is that Ramos caused Plaintiff to walk on his toes and at an extremely fast pace. Plaintiff stopped walking in order to complain to Officer Fontes about the manner of Ramos's escort because Plaintiff had shower shoes on and had screws in his ankles. After Plaintiff made his complaint, Ramos stood back one step and then placed Plaintiff in a bear hug Plaintiff declares that he threw his head back in an attempt to get Officer Ramos off so that Plaintiff could breathe. (Pl.'s Am. Compl. 5; Pl.'s Decl. ¶ 7).

The opposing parties' differing accounts of the escort, especially regarding the events that precipitated Officer Ramos's bearhug (e.g., whether Plaintiff was made to walk at an extremely fast pace, whether Plaintiff informed Officer Ramos that he could not walk at such a pace due to the condition of his ankles, and whether Plaintiff started pulling away in an attempt to break control), raise factual disputes over the circumstances under which Officer Ramos used force against Plaintiff. These factual disputes are material with respect to whether unreasonable or excessive force was used, which is a necessary element of the California state law assault and battery claim. Accordingly, Defendant is not entitled to summary judgment.

///

8

Defendant also argues that summary judgment is warranted because "Rodriguez was not harmed in the incident, which necessarily dooms his claims because he cannot establish damages." (ECF No. 37-1 at 14). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury," but rather will be "limit[ed in] the damages he may recover." Wilkins v. Gaddy, 559 U.S. 34, 38, 40 (2010). "It has long been established, both in tort and criminal law, that the least touching may constitute battery. In other words, *force* against the person is enough, it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark." People v. Rocha, 3 Cal.3d 893, 899 n.12 (Cal. 1971) (internal quotation marks and citation omitted). Accordingly, Defendant is not entitled to summary judgment on this ground.

## IV.

## RECOMMENDATION AND ORDER

Based on the foregoing, the undersigned HEREBY RECOMMENDS that Defendant's motion for summary judgment (ECF No. 37) be DENIED.

Further, IT IS HEREBY ORDERED that Plaintiff's motion to clarify (ECF No. 42) be TERMINATED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time

///

9

may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 7, 2021**

_____
UNITED STATES MAGISTRATE JUDGE